JOHN STULL *vs.* THOMAS D. HURTT, MARTHA E. HURTT AND OTHERS.—*June* 1851.

A vendee agreed to purchase certain lands, for a certain sum, part of which he was to pay on the first of January, 1848, and execute a mortgage of the lands to secure the balance, both of which he failed to do, and at the time the first payment became due, it was proved that he was in embarrassed circumstances, and was pressed by other creditors whose claims he was unable to satisfy. HELD: That under these circumstances the vendor was not bound to resort to his remedy at law, before he could enforce his lien in equity.

A vendee contracted in writing to purchase " a farm or tract of land, called *Mother's Care,* containing one hundred and seventy-three acres, *more or less,*" for which he promised to pay the gross sum of $2300. At the time the contract was made, the vendor, when questioned as to the number of acres, told the vendee that " he had heard his brother say that the old plat

called for one hundred and seventy-three acres, but he did not himself know the quantity, never having seen it surveyed. HELD : That this statement of the vendor cannot be considered such a representation as would make it inequitable to compel the vendee to perform the contract, though the farm was found to contain but one hundred and forty-five acres.

If this statement could be regarded as a representation of quantity, on the *part of the vendor*, the proposition, that it was of the essence and part of the contract, and being so, this large discrepancy ought to entitle the vendee to an allowance for the deficiency, might have some weight.

In the absence of fraud, wilful concealment, misrepresentation or any specific representation of quantity, except as stated in the above contract, from which it clearly appears the land was not sold by the acre, equity cannot be invoked to allow for a deficiency.

In the absence of fraud, the words *"more or less,"* must be considered as qualifying the representation of quantity, and neither party can claim relief either for a deficiency or a surplus.

This contract must be considered a sale of lands for a specified sum, in which the words, *"more or less,"* are intended to negative any representation of quantity.

APPEAL from the *Court of Chancery.*

The bill in this case was filed by the appellees against the appellant for the specific execution of a contract for the sale of lands. The terms of the contract are stated in the opinion of this court. The bill alleges the failure of the vendee to comply with the terms of sale, his embarrassed pecuniary condition, and other circumstances, showing the vendors to be without remedy at law, and prays that the vendee may be decreed to perform his contract, and in default thereof the lands be sold to pay the purchase money.

The defendant was summoned but not appearing an interlocutory decree was passed against him, testimony taken establishing the allegations of the bill, and a decree passed for the sale of the lands. After the decree and after the trustee had advertised the property for sale, the vendee filed a petition excusing himself from not making defence at the proper time, and alleging, that while the negotiation was going on and at the time of the contract, the vendor represented that the number of acres specified in the contract (one hundred and seventy-three acres) was shown to be the true number by an old plat,

but that subsequently, and after the first payment had been made and possession delivered, the vendors caused a survey of the land to be made, by which it appeared that it only contained one hundred and forty-five acres, one rood and thirty-perches, and praying that the trustee might be prohibited from selling, the decree vacated, or allowed to stand only as a security for the performance by the petitioner of his contract of purchase, after such deductions from the purchase money, on account of deficiency, as he might appear to be entitled to.

*Thomas D. Hurtt,* the party who made the contract of sale for himself and the other vendors, answered this petition, expressly denying all misrepresentation in reference to the quantity of land or in any other respect. The answer, however, admits, that in the course of the conversation of respondent with the agent of the vendee, with whom the contract was made, the agent inquired if respondent knew the quantity of the land? that respondent told him he did not, he had never seen it surveyed, but he had heard his brother say the *old plat* called for one hundred and seventy-three acres. The answer also admits that said farm contains but one hundred and forty-five acres, two roods and four perches.

Upon this petition and answer the chancellor (Johnson) passed an order dismissing the petition with costs, and from this order as well as from the decree for the sale of the land, the vendee appealed.

The cause was argued before Dorsey, C. J. Chambers, Martin and Frick, J.

By McLean, for the appellant, and
By Vickers, for the appellees.

Frick, J., delivered the opinion of this court.

The appellant, by *S. S. Cake,* his agent, agreed in writing with *Thomas D. Hurtt,* to purchase a tract of land called "*Mother's Care,*" containing one hundred and seventy three acres, more or less, for the sum of twenty-three hundred dollars;

first payment of five hundred dollars to be made on the 1st day of January, 1848, at which time possession was to be delivered; and the balance in three annual instalments of six hundred dollars, payable in one, two and three years thereafter. It was further agreed that the appellant was to receive a good and sufficient deed of the land, while at the same time he was to execute and deliver to the appellees a mortgage deed of the premises, as security for the three last payments mentioned in the said agreement.

The land in question belonged to all the appellees, and the appellant himself afterwards recognized, and by his signature on the back, affirmed and endorsed the agreement as his own.

The deed of conveyance of the land was duly executed by the appellees, and tendered to the appellant. At the same time the contemplated mortgage was prepared and presented to the appellant for his execution, which, however, he evaded and delayed until the first payment under the agreement became due. Failing in this payment, the bill was filed alleging the inability of the appellant to pay, even if proceedings at law were instituted to enforce it, and praying by reason thereof, either the specific performance of the agreement, or that by the usual proceeding by sale of the land, the lien of the appellees as vendors, might be enforced in equity.

The testimony taken under an interlocutory decree, discloses the embarrassed pecuniary condition of the appellant in the early part of the year 1848, when the first instalment became due; that he was at that time importuned and pressed by claims made upon him by other creditors, which he was unable to satisfy; indicating clearly that he had not then means or property sufficient to pay all his liabilities. The question is, whether under such circumstances, the appellees were bound to resort to the remedy at law, before they could invoke the aid of a court of chancery to enforce the equitable lien which the parties themselves contemplated; and which the appellant has evaded by his refusal to perfect the agreement, and execute the mortgage as stipulated between them?

If the mortgage provided for in the contract, and which was

57    v.9

prepared and tendered to the appellant for his signature, had been executed and delivered, the rights of the appellees upon breach of condition, to resort to their equitable remedy upon it, could not be questioned. Ought it then to avail the appellant to insist that his neglect or his refusal to do what he was bound to do, must drive the vendor to another and a more circuitous remedy than the one agreed upon, and expressly within the view of the parties themselves? This failure on his part, would alone justify the resort of the appellees to the remedy selected by them, and relieve the case from the course of proceeding, which it is insisted they were bound to adopt, before the relief could be granted which they are now seeking in equity. Under any aspect of the case, however, it was not incumbent on them to seek their remedy first in a court of law; because it is manifest from the testimony, such remedy would not have proved adequate and complete, and their case is fully covered by the doctrine of this court in 12 *G. & J.*, 479.

The appellees being thus properly in a court of equity, has the appellant any claim to suspend the action of that court in enforcing the vendor's lien?

In referring to the contract, it will be seen that the land was not sold at a stipulated price per acre, but for a sum in gross, and is described as "a farm or tract of land called *Mother's Care,* containing one hundred and seventy-three acres, more or less." It is the farm or tract of land which is sold in terms as an entirety, and the contract is not predicated of the quantity of land. It is true, the vendor when questioned as to the number of acres, told the vendee that he had heard his brother say the old plot called for one hundred and seventy-three acres; but he did not himself know the quantity, never having seen it surveyed. Upon this statement, it is alleged that the land was sold in reference to this plot, and that it constitutes a representation of quantity. This explanation with regard to the number of acres, and his means of stating it, disclosed at the same time to the appellant, can, by no fair construction, be considered such a representation as would make it inequitable to compel the performance of the appellant's part of the con-

tract. It is not pretended that he did *not* hear his brother say so. But the argument is, that this representation was of the essence and part of the contract; and being so, the large discrepancy between the quantity sold and quantity contracted for, ought to suspend the decree of the court, and let in the claim of the appellant to be allowed for deficiency.

The proposition might have some weight if we could regard this as a representation on the part of the vendor. But he expressly stated that he did not know the number of acres, except from what another had told him; which might or might not be true, but for which he did not intend to make himself responsible. And to avoid any such inference or construction, it is expressly stated in the contract that the tract contains that quantity of acres, *more or less*, for which a gross sum was stipulated to be paid. In the absence of any fraud, and none is pretended or alleged, these words must be considered as qualifying the representation of quantity, and neither party could claim relief, either on account of a deficiency or a surplus. Such is the doctrine of this court in *Jones vs. Plater*, 2 *Gill*, 125, and in the absence of any specific representation of quantity, except as stated in the contract, from which it manifestly appears that the land was not sold by the acre, a court of equity cannot be invoked to allow for deficiency. Neither fraud, nor wilful concealment, or misrepresentation on the part of the vendor appears on the record, and the contract must be considered a sale of the land for the specified sum, in which the words "more or less," are intended to negative any representation of quantity. And the appellant having failed to comply with his stipulations for the payment, the decree of the chancellor was correct, and must be affimed, and the case remanded.

**DECREE AFFIRMED.**